IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

DARREN YOUNG,

          Defendant.

**SEALED**

Criminal No. 22-054

ELECTRONICALLY FILED

**<u>Memorandum Opinion Denying Motion to Dismiss the Indictment (doc. 40)</u>**

## I.      Introduction

This Court is presented with the question of whether 18 U.S.C. Section 922(g)(1), which prohibits felons from possessing firearms and ammunition, is constitutional both facially and "as-applied," in light of the recent landmark Supreme Court precedent in *New York State Rifle & Pistol Ass'n v. Bruen*, ___ U.S. ___,142 S.Ct. 2111, ___ L.Ed.2d ___, 2022 WL 2251505 (2022). This Court joins several other district courts presented with the same or a similar question, and concludes that the decision of the Supreme Court in *Bruen*, does not undermine or negate the constitutionality of Section 922(g) as established by prior caselaw. After careful consideration, Defendant's Motion to Dismiss the Indictment (doc. 40) will therefore be DENIED.

## II.      Background and Outline of Analysis

### A.  Procedural History

On March 8, 2022, Defendant was charged in a one-count Indictment, with Possession of Ammunition by a Convicted Felon, in violation of 18 U.S.C. Section 922(g)(1). The Indictment alleges that on November 9, 2021, Defendant possessed eight (8) rounds of Winchester 9mm

Luger ammunition despite his status as a convicted felon in the Western District of Pennsylvania. Doc. 3.

As further alleged in the Indictment, Defendant has previously been convicted of four (4) felony drug offenses in the Commonwealth of Pennsylvania, to wit:

- September 5, 1997, at Docket Number CP-02-CR-0006070-1997, in the Court of Common Pleas, County of Allegheny, of Possession with Intent to Distribute a Controlled Substance;

- Oct. 24, 2000, at Docket Number CP-02-CR-0001694-2000, in the Court of Common Pleas, County of Allegheny, of Possession with Intent to Distribute a Controlled Substance;

- Oct. 24, 2000, at Docket Number CP-02-CR-0008777-2000, in the Court of Common Pleas, County of Allegheny, of Possession with Intent to Distribute a Controlled Substance; and,

- September 22, 2010, at Docket Number CP-02-CR-0015621-2008, in the Court of Common Pleas, County of Allegheny, of Possession with Intent to Distribute a Controlled Substance.

Doc. 3.

On March 17, 2022, Defendant was arraigned, entered a plea of not guilty, and was released on $10,000.00 unsecured bond, with conditions of release.  Doc. 20, Doc. 21.  Upon the filing of two Petitions for Bond Violations, this Court, thereafter, modified the conditions of release, with consent of Defendant, to home detention with electronic monitoring and with a further condition to attend weekly counseling sessions.  Doc. 29, Doc. 35.

On May 24, 2022, this Court held a status conference, at which a date for either a change of plea or additional status conference was set to occur on August 22, 2022.  Doc. 36, Doc. 42. In the interim, on June 23, 2022, the Supreme Court of the United States issued its transformative decision in *New York State Rifle & Pistol Ass'n v. Bruen*,  ___ U.S. ___,142 S.Ct. 2111, ___ L.Ed.2d ___, 2022 WL 2251505 (2022), striking down as unconstitutional a New York City licensing scheme which allowed authorities to deny concealed-carry permits even where an applicant met certain threshold criteria.  (The facts and significance of this holding will be further addressed in the Discussion section of this Memorandum Opinion).

On August 20, 2022, two days before the scheduled August 22, 2022, status conference, Defendant, through his able counsel, filed the instant Motion to Dismiss the Indictment arguing that the Supreme Court's recent decision in *Bruen*, 142 S. Ct. 2111 (2022) should be read as confirmation of his "individual right" to "carry a firearm" and thus, the current Indictment under 18 U.S.C. Section 922(g) is constitutionally invalid and must be dismissed.  Doc. 40 at ¶ 11.

This Court then conducted the August 22, 2022, status conference, during which it consulted with the parties and agreed upon a timely briefing schedule on the pending Motion to Dismiss.  Doc. 42.   In conformance therewith, on September 19, 2022, the Government filed its Opposition to the Motion to Dismiss, and on October 3, 2022, Defendant filed his Reply thereto, with numerous attachments.  An additional status conference will be held tomorrow, November 8, 2022.  The instant matter is ripe for disposition.

### B.   Summary of Defendant's Arguments

Defendant's primary argument in his Motion to Dismiss is centered upon his position that 18 U.S.C. Section 922(g) is unconstitutional, facially and as-applied to him, because, as a "person," he is entitled to the protection of the Second Amendment, and as recently promulgated

in *Bruen,* the charges against him, of alleged possession of ammunition, fall within the scope of protections under the Second Amendment.  He posits that *Bruen* dictates that he is a "person," (despite his status as a felon) entitled to the protections of the Second Amendment, that Section 922(g) must therefore give way to the rights and guarantees of the Second Amendment, and that, despite his felony convictions, the Indictment is therefore unconstitutional because the Government has failed satisfy its burden of demonstrating that the historical tradition supports the statute at issue.

### C.  Outline of Analysis

 This Court begins its analytical journey with the text of the 18 U.S.C. Section 922(g), the applicable statute that forms the basis of the federal charges in this case and the juxtaposition of the application of that statute to Defendant, while duly considering the paramount rights of "persons" to keep and bear arms, as enshrined in the Second Amendment to the Constitution, and as further and most recently construed by the highest Court of this Land in *Bruen*.

 Much like Defendant in his well-versed and timely briefing, this Court also finds it prudent to detail a roadmap of the history and development of recent jurisprudential authority under the prism of the Second Amendment guarantees on protections of an individual's right to keep and bear arms, beginning with *United States v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and evolving in several decisions of the United States Court of Appeals for the Third Circuit over the last approximately 14 years (with an emphasis on prohibitions of carrying firearms against felons under 18 U.S.C. Section 922).  Specifically, the progeny of *Heller* before the United States Court of Appeals for the Third Circuit has been set forth in *United States v. Marzzarella*, 614 F.3d 85 (3d. Cir. 2010), *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011), *Bindercup v. Attorney Gen.*, 836 F.3d 336 (3d Cir. 2016), *Holloway v.*

*Attorney General*, 948 F.3d 164, 168 (3d Cir. 2020), *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir. 2020) and *United States v. Boyd*, 999 F.3d 171, 175 (3d Cir. 2021), all of which the Court will discuss.

This Court will then analyze *Bruen,* where the Supreme Court of the United States issued its paradigm shifting decision, and upon which Defendant primarily bases his pending Motion to Dismiss.  This Court will also determine the impact of that decision on the matter before this Court and while the ramifications of that ruling are vast, the Court has surveyed the current state of the case law that has developed over the last four months and does not agree with Defendant that it effectively opens the door to find Section 922(g)(1) unconstitutional.  This Court will then explain its agreement with other district courts who have found in the wake of *Bruen* that *Heller* remains viable and instructive.   Finally, the Court will then analyze Defendant's as-applied challenge, finding that it does not protect his alleged conduct in this case.

### III.    Discussion

### A. The text of 18 U.S.C. Section 922(g)(1) and the Second Amendment

The Court begins this analytical journey, as it should, with the nature of the pending charges against Defendant as set forth in statutory text.  The details of the conduct with which Defendant was charged (Possession of Ammunition by a Convicted Felon in violation of 18 U.S.C. Section 922(g)(1)) is fully outlined in Section II -Procedural History of this Memorandum Opinion, and need not be repeated.

18 U.S.C. Section 922(g)(1) provides that it is a federal crime, for any person, who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition.  Defendant is charged with possession of the latter.  This blanket federal ban is punishable by up to 10 years of imprisonment. 18 U.S.C. Section 924(a)(2).

The text of the Second Amendment to the United States Constitution provides, "[a] well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."  *U.S. Const. Amend II.*

### B.  Supreme Court Precedent in *Heller* and *McDonald*

In the landmark precedent set forth in *United States v. Heller*, the Supreme Court held that the District of Columbia's ban on handgun possession in the home violates the Second Amendment.   The *Heller* Court analyzed the Second Amendment's text, by history and tradition, and found that the Second Amendment protects the "individual right to possess and carry weapons in case of confrontation." *Id*. at 592.   While also noting that an exhaustive historical analysis of the Second Amendment was not required, the *Heller* Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . ." *Id.* at 626.

In 2010, the Supreme Court then struck two Illinois city handgun bans, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), holding that the Second Amendment is fully applicable to the States, through the Fourteenth Amendment.   The *McDonald* Court quoting *Heller*, again stated that the Opinion should not be construed to undermine the longstanding regulatory measures prohibiting felons in possession from carrying a firearm.   *Id*. at 786.

### C.  "Felons in Possession," and Limits on Firearms Licensing after *Heller* – A Third Circuit Review of Cases

#### 1.   *United States v. Marzzarella*

Two years after the *Heller*, in the 2010 case of *United States v. Marzzarella*, the United States Court of Appeals for Third Circuit seized its first opportunity to construe the historical precedent of *Heller*, in line with 18 U.S.C. Section 922.  *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010).   In *Marzzarella*, Defendant moved to dismiss an Indictment for possession of

a firearm with an obliterated serial number (in his home) in violation of Section 922(k), claiming that the statute, as applied to him, violated his Second Amendment right to keep and bear arms as recognized in *Heller*.

The Court of Appeals in *Marzzarella* perceived the *Heller* precedent as requiring a two-step analysis – with the Court first examining whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment.  If it does not, the *Marzzarella* Court held, the examination ends there.  If it does, the Court must then evaluate the law under a means-end scrutiny.

Crucially, the Court of Appeals ruled that *Marzzarella*'s possession of "an unmarked firearm in his home is unprotected conduct;" however, it still went on to step two, without definitively determining which standard of review was applicable.  614 F.3d at 101. The *Marzzarella* Court ultimately concluded that Section 922(k) would pass constitutional muster under either an intermediate or strict scrutiny standard.  *Id.*  at 101.

### 2.  United States v. Barton

Next, in *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011), another felon in possession of a firearm case, where a search of Defendant's home after a tip from an informant revealed the recently bought firearm and several others, Defendant filed a Motion to Dismiss the Indictment alleging that Section 922(g)(1) violated his constitutional right to "use arms in the defense of hearth and home," both on its face and as-applied to him.  Neither of those arguments was convincing to the Court of Appeals for the Third Circuit.  The *Barton* Court explained that on the face of the statute and *Heller*, the Court must 'presume' that under most circumstances, 'that felony dispossession statutes regulate conduct which is unprotected by the Second Amendment." *Id.* at 173.

Turning to the as-applied analysis, the *Barton* Court construed the pronouncement in *Heller*, that a 'presumption' of lawfulness in the context of felon disarmament bans at least impliedly gave way for a possible rebuttal by Defendants.  The *Barton* Court then decidedly analyzed the "historical pedigree of 18 U.S.C. Section 922(g) to determine whether the traditional justifications underlying the status support a finding of permanent disability in this case." 633 F.3d at 173.

The *Barton* Court elaborated on the underpinnings of the firearms legislation dating back to 1938, and ultimately found that in order to be successful in an as-applied challenge, Defendant "must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections."  The Court postulated that a felon convicted of a "minor non-violent crime might show that he is no more dangerous than a typical law abiding citizen."  *Id*. at 174.  According to *Barton*, it is Defendant's burden to establish facts which demonstrate that he is outside the intended scope of Section 922(g)(1), which the Court of Appeals found he failed to establish in that case.

### 3.  *Binderup v. Attorney General* and *Holloway v. Attorney General*

Five years later, in 2016, the Court of Appeals for the Third Circuit, in *Binderup v. Attorney Gen.*, 836 F.3d 336 (3d Cir. 2016), an *en banc* Court revisited and overruled *Barton* in the context of as-applied challenges.  *Binderup* dealt with two separate factual scenarios but both involved cases where Plaintiffs had persuaded a Pennsylvania court to remove their firearm bans on the basis of their prior convictions.  However, because those state orders had no impact on the federal bar to them possessing a gun, upon consideration before the district court, both held that "Section 922(g)(1) is unconstitutional as applied."  *Id.* at 340.

Both the Government and the Plaintiffs appealed the district court's decision, and an *en banc* Court in *Binderup* agreed that Plaintiffs properly rebutted the presumption that they are not entitled to the protections of the Second Amendment by succeeding in step one of the *Marzzarella* analysis (i.e. whether Plaintiffs committed a serious crime); and the Government failed at step two to demonstrate under even the lower intermediate level of scrutiny that it may apply Section 922(g)(1) to bar them.  The Court of Appeals for the Third Circuit, sitting *en banc*, then took the significant step of finding that Section 922(g)(1) was unconstitutional as-applied to Plaintiffs in *Binderup*.

Conversely, in *Holloway v. Attorney General*, 948 F.3d 164 (3d Cir. 2020), the Court of Appeals for the Third Circuit reversed the District Court holding that Section 922(g)(1) was unconstitutional as-applied to Plaintiff, who was a person prohibited from carrying a gun and thus denied a license after having pled guilty to DUI, and serving 5 years of probation with a 90 day period of incarceration (with work release).  Applying *Marzzarella*, the *Holloway* Court did not venture beyond an analysis of step one (whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment), finding that Plaintiff's DUI conviction constitutes a "serious crime," under *Binderup,* and therefore, excludes him from the scope of protection under the Second Amendment.

As Defendant recognizes, and this Court concurs, *Binderup* and *Holloway* were groundbreaking because, the Court of Appeals for the Third Circuit elucidated a "nonexclusive" multi-factor test for determining whether a crime is sufficiently 'serious' to divest a person of his or her Second Amendment rights:

(1) Whether the crime of conviction is classified as a misdemeanor or a felony;

(2) Whether the criminal offense involves violence or attempted violence as an element;

(3) The nature of the sentence imposed;

(4) Whether there is a cross-jurisdictional consensus as to the seriousness of the crime; and,

(5) The potential for danger and risk of harm to self or others (as explained recently by the Honorable Judge Wiegand in *Stiffler v. Garland*, 20-CV-1120, Mem. Opn., (W.D. Pa. Feb. 2, 2022).

This Court further agrees with Defendant that the *Binderup* and *Holloway* cases also solidified the following tenets:

(1) The two-step test set forth in *Marzzarella* (and not articulated in *Barton*) governs Second Amendment challenges;

(2) Step one of *Marzzarella* requires the Court to determine whether a person has committed a "serious" offense, and thus was an "unvirtuous citizen" who was historically barred from possessing firearms and therefore was beyond the scope of the protection of the Second Amendment;

(3) A person seeking to challenge the authority no longer needs to demonstrate whether the crime was violent or whether that person poses a threat of violence and to that extent, *Barton* is overruled;

(4) A person who is otherwise barred from possession of a firearm can make a factual showing that he or she falls outside of the historically barred class; and

(5)  Under *Marzzarella*, at step two, intermediate scrutiny applies.

Doc. 40 at pgs 14-15 (citing *Binderup*, and *Holloway*, at 171-172).

### 4.   *Folajtar v. Attorney General and United States v. Boyd*

Two more recent decisions by the Court of Appeals for the Third Circuit are noteworthy: *Folajtar v Attorney General*, 980 F.3d 897 (3d Cir. 2020), and *United States v. Boyd*, 999 F.3d 171, 175 (3d Cir. 2021).  In *Folajtar*, the Court of Appeals for the Third Circuit addressed the first step of *Marzzarella*, and ended its analysis there, finding that Plaintiff is not a 'virtuous citizen' based upon her conviction for false statements in a tax return, a federal felony, and thus not entitled to the protections of the Second Amendment.  *Folajtar*, 980 F.3d at 910.  In *Boyd*, the Court of Appeals for the Third Circuit, considering an as-applied challenge, employed both steps of *Marzzarella* to find that possessing a firearm (while subject to a domestic violence order) placed Defendant within the class of presumptively dangerous persons who are historically excluded from Second Amendment protection.  The Court in *Boyd* also applied the burden shifting paradigm and concluded that the Government met its burden to show that the statute (Section 922(g)(8)) would survive heightened scrutiny, finding that the statute is substantially related to the goal of reducing domestic violence, which is an important state interest.

### D.  Summary of the *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* Holding and New Legal Framework

On June 23, 2022, the Supreme Court of the United States issued its decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, and is the primary catalyst for the filing of Defendant's Motion to Dismiss in this case, as well as similar motions by similarly situated Defendants across this Nation. *Bruen,* 142 S.Ct. 2111, 2022 WL 2251305.   In *Bruen*, the Supreme Court considered and struck down the New York regulatory licensing program, whereby an applicant was required to prove that he or she had "proper cause" to carry a handgun in public.  While

reflecting upon and adhering to historical precedent in *Heller* and *McDonald,* the *Bruen* Court held that:

> We recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."

*Bruen*, 2022 WL 2251305 at *5

The *Bruen* Court's holding that "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."  *Id*. at 2156.  The Court also emphasized that the protections of the Second Amendment were limited to law-abiding citizens, when it explained that nothing in *Bruen* should be interpreted to call into question the unconstitutionality of 43 states "shall issue" regimes.  The Supreme Court explained that "shall issue" regulations are not affected by the Court's decision because those are designed to ensure that those possessing firearms "are, in fact, law-abiding, responsible citizens."  *Id*. at 2138 n. 9.

*Bruen* encompassed (1) a facial constitutional challenge by (2) "law-abiding adult citizens," whereas, this instant case involves an as-applied and a facial challenge by an alleged four time convicted drug felon in the context of Section 922(g)(1).  Nonetheless, the Majority Opinion provides a clear roadmap for the district courts to follow in determining the constitutionality of a statute under the Second Amendment.

The *Bruen* Court stated that "In the years since [*Heller* and *McDonald*], the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny.  Today, we decline to adopt that two-

12

part approach." *Id.* Concluding that challenges under the Second Amendment are not subject to "means-end" scrutiny, the Court in *Bruen* determined that the standard for applying the Second Amendment is as follows: "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2129-2130. Therefore, this Court is required to apply the new legal framework in the context of a Second Amendment challenge - - that is, in order to justify a gun regulation, the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126.

### E.  Lessons of *Bruen* on continued application of *Heller* and *McDonald* to prohibitions on the possession of firearms by felons

While there can be no doubt that *Bruen* shifts the legal landscape with the new legal test for determining the constitutionality of a regulation under the Second Amendment, the Court in *Bruen* also left the rulings in *Heller* and *McDonald* undisturbed and the *dicta* within the *Bruen* Opinion provides clear evidence that the Supreme Court did not intend to undermine the constitutionality of Section 922(g).

The Court in *Bruen* relied upon *Heller* and *McDonald*, for the conclusion that prohibitions on the possession of firearms by felons are "presumptively lawful," and noted that "there will be time enough to expound upon the historical justifications for such a prohibition." *Heller* at 626. The *Bruen* Court highlighted its continued belief that "[a]lthough we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Bruen* citing *Heller*, 554 U.S. at 626.

*Bruen* does not effectively overrule, or even cast into doubt, the legal underpinnings of felons in possession statutes as established in *Heller* and *McDonald.* Instead, the Majority

Opinion in *Bruen* stated that its holding was in keeping with *Heller*.  Justice Kavanaugh, joined

by Chief Justice Roberts, noted that "the Second Amendment allows a 'variety' of 'gun

regulations,'" and further explained that "*Bruen* does not disturb what the Court said in *Heller*

about the restrictions imposed on possessing firearms, namely the longstanding prohibitions on

the possession of firearms by felons." 142 S. Ct. 2162 (Kavanaugh, J., concurring).  Justice Alito

also noted in his concurrence that nothing in *Heller* and *McDonald* has been "disturbed."  *Id.* at

2157 (Alito, J., Concurring).  Even the dissent by Justice Breyer, joined by Justices Kagan and

Sotomayor stated that *Bruen* "casts no doubt on Heller's treatment prohibiting firearms

possession by felons."  Id. At 2189 (Breyer, J., Dissenting).

1. **Other courts application of *Bruen* - - the plain text of the Second Amendment does not implicate 18 U.S.C. Section 922(g) as convicted felons are not part of "the people" protected, without reaching historical analysis.**

The words and *dicta* of the Supreme Court, quoted immediately above, have

been relied upon by at least two other district courts to demonstrate that the plain text of

the Second Amendment does not apply to Section 922(g)(1) charges for felons in

possession of firearms, in the context of facial challenges.

In *United States v. Ramos*, 21-CR-395 (C.D. Cal. Aug. 5, 2022), the district

court stated:

> It thus appears that the Supreme Court has no qualms about a statute that
> withholds firearms from those who do not obey the law – even if they are non-
> violent – because those individuals are not part of 'the people' protected by the
> Second Amendment. Accordingly, the Court has serious doubts that the plain
> text of the Amendment applies to Defendant and could find Section 922(g)
> constitutional on those grounds alone.

Doc. 44-2.

Likewise, in *United States v. Ingram*, 18-CR-557 (S.C. Aug. 25, 2022), the

district court concluded that: "This, coupled with the majority's focus in *Bruen* on the

Second Amendment rights of 'law-abiding citizens' throughout the opinion convinces this Court that the Supreme Court would conclude that these statutes fail to infringe on any Second Amendment rights." Doc. 44-3.

This Court agrees with the views of the district courts in *Ramos* and *Ingram*, and finds that *Bruen* reinforces, rather than casts into doubt, the prohibitions on felons in possession of firearms (or in this case ammunition) and affirms the legal underpinnings of the *Heller* and *McDonald* opinions.  In other words, as the Government contends, and this Court agrees, *Bruen*, *Heller* and *McDonald* dictate that Defendant's alleged conduct does not fall within the scope of the Second Amendment's protections due to his felony drug convictions.

> 2. **Application of *Bruen* – historical traditions of firearm regulation supports felon dispossession statute (Section 922(g)(1))**

In keeping with *Bruen's* new analytical framework, assuming for the sake of argument that the Second Amendment protects Defendant's alleged conduct and a historical analysis is then required, the Court will next answer the question of whether Government has demonstrated that the statute at issue is consistent with this Nation's historical tradition of firearm regulation.  *Id.* at 2126.  This Court answers that question affirmatively.

This Court recalls the statements of the *en banc* Court of Appeals for the Third Circuit in *Binderup:* "[t]he view that anyone who commits a serious crime loses the right to keep and bear arms dates back to our founding era."  *Binderup*, 836 F.3d at 349. Indeed, this view is consistent with the historical tradition, and as set forth in the Court of Appeals for the Third Circuit, as the right to bear arms has been linked with the

concept of "virtuous citizenry," while also allowing the dispossession by "unvirtuous citizens." *Id*. at 348-49 (collecting sources); see also, *Folajtar*, 980 F.3d at 902.

As the Government emphasizes, and this Court agrees, the tradition of a limited, as opposed to an unrestricted right to bear arms was based upon a common-law tradition that even pre-dated the Constitution.   Dating back to 1637, the Massachusetts colony enacted a law that required named individuals who expressed 'opinion & revelations,' that seduced & leg into dangerous errors many of the people' of New England to turn in all 'guns, pistol, swords, powder, shot & match."  Eric M. Ruben and Darrell A. H. Miller, Gun Law History in the United States and Second Amendment Rights, 80 LAW & CONTEMP. PROBS. 55, 72 (2017)(citing and quoting 1 RECORDS OF THE GOVERNOR AND COMPANY OF THE MASSACHUSETTS BAY IN NEW ENGLAND 211-12 (Nathanial B. Shurtleff ed. 1853)).  As the Government further points out, the reference to the phrase "powder, shot & match" demonstrates that it was not only firearms, but also ammunition and other associated accessories that had been historically regulated.

As the Court of Appeals for the Eighth Circuit in *United States v. Bena* summarized,  664 F.3d 1180 (8th Cir. 2011), this tradition continued until and through the debates surrounding the passage of the Second Amendment, and the Supreme Court's description of statutes such as 18 U.S.C. Section 922(g)(1) as "longstanding prohibitions on the possession of firearms by felons," that are "presumptively lawful regulatory measures," whose constitutionality is not called into question by the emerging Second Amendment jurisprudence. *Id.* at 1183-1184 citing *Heller*, 554 U.S. at 626, 627 n. 26.  All of which is to say, the statutory prohibition of felons possessing

firearms (and ammunition) is consistent with this Nation's tradition of firearm

regulation.[1]

>   3.  **This Court follows other analogous post-*Bruen* facial challenges that
>       have been rejected, including *United States v. Price* and *United States
>       v. Minter*.**

Since the June 23, 2022, Decision in *Bruen*, virtually all of the district courts[2] to have

considered facial challenges to the constitutionality of 18 U.S.C. Sections 922(g), 923, and 924,

---

[1] The Court also notes Defendant's reliance on a few key dissents/concurrences in recent cases calling into question the historical tradition of complete bans on firearms for convicted felons on the basis that they did not emerge until 1961, and thus there is no historical precedent for disarmament statutes, but this Court declines to find these arguments to be convincing because they are not majority opinions. Doc. 44 at 27-28.

[2] As the Government emphasizes, "decisions from federal courts around the country ruling on motions challenging the constitutionality of various subsections of 18 U.S.C. §§ 922, 923, and 924 and 26 U.S.C. § 5861 have started appearing in the wake of *Bruen*." The Government set forth a review of the following decisions, as of September 14, 2022, which shows that every court to consider the issue has upheld the constitutionality of the challenged subsections of these statutes. See *United States v. Rojo*, No. 3:21-cr-682 (S.D. Cal. Sept. 14, 2022) (holding § 922(g)(1) does not violate the Second Amendment) (oral bench ruling); *United States v. Cockerham*, No. 5:21-cr-6 (S.D. Miss. Sept. 13, 2022) (same); *United States v. Havins*, No. 3:21-cr-1515 (S.D. Cal. Sept. 12, 2022) (holding 18 U.S.C. § 922(g)(1) and 26 U.S.C. § 5861(d) do not violate the Second Amendment) (oral bench ruling); *United States v. Patterson*, No. 7:19-cr-231 (S.D.N.Y. Sept. 9, 2022) (holding § 922(g)(1) does not violate the Second Amendment) (oral bench ruling); *United States v. Doty*, No. 5:21-cr-21 (N.D.W. Va. Sept. 9, 2022) (same); *United States v. Burrell*, No. 3:21-cr-20395, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022) (same); *United States v. Smith*, No. 3:16-cr-86 (D. Alaska Sept. 6, 2022) (holding § 924(c) does not violate the Second Amendment); *United States v. Randle*, No. 3:22-cr-20 (S.D. Miss. Sept. 6, 2022) (holding § 922(g)(1) does not violate the Second Amendment); *United States v. Tilotta*, No. 3:19-cr-4768, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) (holding §§ 922(a)(1)(A), 923(a), and 924(a)(1)(A) do not violate the Second Amendment); *United States v. Kays*, Case No. CR-22-40-D, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022) (holding §§ 922(g)(8) and 922(n) do not violate the Second Amendment); *United States v. Nutter*, Crim. Acton No. 2:21-cr-00142, 2022 WL 3718518 (S.D.W. Va. Aug. 29, 2022) (holding § 922(g)(9) does not violate the Second Amendment); *United States v. Ingram*, Crim. Action No. 0:18-557-MGL-3, 2022 WL 3691350 (D.S.C. Aug. 25, 2022) (holding §§ 922(g)(1) and 924(c) do not violate the Second Amendment); *United States v. Jackson*, Case No. CR-22-59-D, 2022 WL 3582504 (W.D. Okla. Aug. 19, 2022) (holding § 922(g)(9) does not violate the Second Amendment); *United States v. Nevens*, No. 2:19-cr-774 (C.D. Cal. Aug. 15, 2022) (holding §§ 922(g)(1) and 924(c) do not

have  uniformly upheld their constitutionality.[3]  Additionally, the Courts who have considered

the historical traditions of firearm regulation for convicted felons have uniformly found that it

consistent with, and therefore constitutional, under the Second Amendment. See Doc. 43 at fn. 6.

In fact, in Defendant's Reply to the Motion to Dismiss with Supplemental Authority (Doc. 44

and Doc. 45), he acknowledges and provides many attached cases, all of which appear to go

against his arguments in the pending Motion to Dismiss.  See Doc. 44 and Doc. 45 (listing

approximately 33 cases).  This Court finds compelling the non-binding precedential authority of

the many district courts who have analyzed the Second Amendment in the context of charges

under Section 922(g)(1), and have concluded that it does not violate the Second Amendment.

In particular, the Court highlights the recent decision of the United States District Court

for the Southern District of West Virginia in *United States v. Price*, where the Court considered

the constitutionality of two firearm prohibition statutes in the wake of *Bruen*, including the

---

violate the Second Amendment); *United States v. Farris*, No. 1:22-cr-149 (D. Colo. Aug. 12, 2022) (holding § 922(g)(1) does not violate the Second Amendment) (minute order); *United States v. Adams*, No. 1:20-cr-628 (S.D.N.Y. Aug. 10, 2022) (same) (oral bench ruling); *United States v. Ramos*, No. 2:21-cr-395 (C.D. Cal. Aug. 5, 2022) (same); *United States v. Maurice*, No. 7:22-cr-48 (S.D.N.Y. July 14, 2022) (same) (oral bench ruling); *United States v. Daniels*, Case No. 1:22-cr-58-LG-RHWR-1, 2022 WL 2654232 (S.D. Miss. July 8, 2022) (holding § 922(g)(3) does not violate the Second Amendment).

[3] In *United States v.  Minter*, (analyzed in this opinion), which appears to be the most recent non-binding precedent, the Court noted that as of the date of filing of the Opinion thereon, Courts have uniformly rejected facial and as-applied challenges to Section 922(g)(1) arising from the Supreme Court's decision in *Bruen*.  *United States v. Minter*, 2022 WL 10662252 (M.D. Pa. Oct. 18, 2022)(citing *United States v. Ingram*, 2022 WL 3691350 (D.S.C., August 25, 2022); *United States v. Cockerham*, 2022 WL 422 9314 (W.D. Miss., September 13, 2022*); United States v. Jackson*, 2022 WL 4226229 (D. Minn. Sept. 13, 2022); *United States v. Hill*, 2022 WL 4361917 (S.D. Cal., Sept. 20, 2022); *United States v. Coombes*, 2022 WL 4367056 (N.D. Okla., Sept. 21, 2022); *United States v. Collette*, 2022 WL 446790 (W.D. Tex., Sept. 25, 2022); *United States v. Siddoway*, 2022 WL 4482739 (D. Idaho, Sept. 27, 2022); *United States v. Charles*, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Price*, -- F.Supp.3d --, 2022 WL 6968457 (S.D. W. Va. Oct. 12, 2022)(analyzed herein); *See also, United States v. Gonzalez*, 2022 WL 4376074 (7th Cir., Sept. 22,2022)).

instant Section 922(g)(1).  *United States v. Price*, 2022 WL 6968457 (S.D. W.V., Oct. 12, 2022).

In that case, the Court granted a Motion to Dismiss the Indictment on charges under Section

922(k)(for possession of a firearm with an obliterated or altered serial number), and denied the

Motion to Dismiss on charges under Sections 922(g)(1), which is directly analogous to the

present case.  Although the Court in *Price* struck down Section 922(k), which relates to

criminalizing possession of a firearm with an obliterated or altered serial number, an issue not

before this Court in the instant case, it ultimately joined the many others district court to have

found in favor of the Government and against Defendant on the issue of the facial

constitutionality of Section 922(g)(1).

Unlike in *Ramos* and *Ingram*, where the district courts in those cases found the plain text

of the Second Amendment did not cover the conduct at issue, the Court in *Price* read *Bruen* to

require focus on individual conduct and to look at the Second Amendment's plain text to

determine whether the Constitution presumptively protects that conduct.  Noting that "[t]he plain

text of the Second Amendment does not include a qualification that Second Amendment rights

belong only to individuals who have not violated any law," the Court found that Defendant's

conduct was covered by the plain text of the Second Amendment.

Interestingly, the *Price* Court declined to discuss whether Section 922(g)(1) is consistent

with the United States' historical tradition of firearm regulation and found that the *dicta* in both

the majority/concurrence and minority of *Bruen*, and the holdings of *Heller* and *McDonald,*

dictates that it is.  In doing so, the Court in *Price* stated that it was "convinced that the Supreme

Court left generally undisturbed the regulatory framework that keeps firearms out of the hands of

dangerous felons."  2022 WL 6968457 at *8.

Although this Court, out of an abundance of caution and for completeness of the record, has found that the Government has sustained its burden to address the historical underpinnings of the firearm regulation at issue, it also agrees with the *Price* Court that *Bruen* generally left undisturbed the regulatory framework that keeps firearms out of the hands of dangerous felons. This Court finds the above analysis by the Court in *Price* to be persuasive.

Just a few weeks ago, in *United States v. Minter*, 2022 WL 10662252 (M.D. Pa., Oct. 18, 2022), the United States District Court for the Middle District of Pennsylvania had occasion to consider a Motion to Dismiss an Indictment charging Possession of a Firearm by a Convicted Felon under 18 U.S.C. Section 922(g)(1), as unconstitutional both facially and as-applied under *Bruen*.  In *Minter*, our sister court in the Middle District of Pennsylvania, denied the Motion to Dismiss and declined to engage in an "original analysis" of whether the Second Amendment's plain text covers the possession of a firearm by a felon, and if so, whether the Government has affirmatively demonstrated that Section 922(g)(1) follows this Nation's historical tradition of firearm regulation.

Instead, similiar to the Courts in *Ramos, Ingram,* and *Price*, the *Minter* Court found that the Supreme Court in *Bruen* "has already signaled the answer to this question," and applied the *dicta* as set forth by the majority, concurrences and dissent.  This Court echoes the conclusions of the *Minter* Court and finds that: "where *Bruen* did not overturn, abrogate, or otherwise suggest that the longstanding prohibitions identified in *Heller*, including the prohibition of possession of firearms by felons, may no longer be lawful, this Court is bound by the Supreme Court's

decision in *Heller*, its progeny, and the Third Circuit cases addressing the constitutionality of Section 922(g)(1)."[4]

### 4.   Defendant's as-applied challenge to Section 922(g)(1) fails.

In Defendant's Motion to Dismiss, he lodges an as-applied challenge to Section 922(g)(1).  Doc. 40.  An as-applied challenge asks this Court to declare the statute unconstitutional as applied to this Defendant and on the facts of the particular case. "The as-applied challenger does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Id.*  (internal quotations and citation omitted).

The parties in this case dispute the impact of *Bruen* and its rejection of the two-step framework for analyzing Second Amendment challenges, in an as-applied context.  As the Government explains, under pre-*Bruen* Third Circuit precedent, to succeed on an as-applied Second Amendment challenge, a defendant had an "extraordinarily high" burden.  *Folajtar*, 980 F.3d at 901 (3d Cir. 2020)  In *Folajtar*, which was reviewed earlier in this Opinion, the Court of Appeals for the Third Circuit held that it was Defendant's burden to: "(1) identify the traditional justifications for excluding [him or her] from Second Amendment protections the class of which [he or she] appears to be a member, and then (2) to present facts about [himself or herself] that

---

[4] This Court recognizes Defendant's contention that some of the Courts have focused on the conduct of Defendant (being felons), and this does not cast them outside the plain and contextual meaning of the word "people," to which the Second Amendment applies.  *United States v. Trinidad*, 21-CR-398 (P.R. Sept. 12, 2022).  Other courts have declined to read into the meaning of *Bruen* that Second Amendment rights apply only to people who have not committed crimes, and Defendant has cited a line of cases developing in Oklahoma.  *United States v. Coombes*, 22-CR-189 (N.D. Okla., Sept. 21, 2022); *United States v. B.B. Jackson*, 22-CR-59 (W.D. Okla., Aug. 19,2022).  Even were this Court to find he was a part of the "people," within the scope of protections of the Second Amendment, which it declines to do, the Government has sustained its burden to demonstrate that the statute at issue is consistent with the history of gun regulation.

distinguish [his or her] circumstances from those of persons in the historically barred class." *Folajtar*, 980 F.3d at 901 (3d Cir. 2020)(quoting *Binderup*, 836 F.3d at 347).  In order to succeed, a defendant "must overcome the generally conclusive rule that a felony conviction is serious, so that it falls outside the historical class of offenses that render felons excluded from Second Amendment protections."  *Id*. at 902.  Pre-*Bruen* caselaw required that if the Defendant was able to satisfy his or her burden at Step One, the Government would then be required to show that the law can survive heightened scrutiny.  Id. at 901.

The Government candidly admits that it is unclear whether *Bruen* removes the "mean-end" analysis, but still succinctly sets forth its argument that Defendant's as-applied challenge fails.  Doc. 43 at 14-15.  However, in Defendant's Reply, he confidently retorts that: "*Bruen* changes the game when it comes to an as-applied challenge.  The [G]overnment does not recognize this reality.  Its written effort to persuade clings to pre-*Bruen* law from the Third Circuit while failing to recognize U.S. Supreme Court rulings."  Doc. 44 at 31-32.

As basis for Defendant's position, he cites *United States v. Coombes*, 22-CR-189, (N.D. Okla. Sept. 21, 2022), for the proposition that the substantive rule of law dictates that the same substantive constitutional analysis applies to both facial and as-applied challenges.  According to Defendant, just as in the context of a facial challenge, this Court must consider whether Section 922(g)(1) as applied to Defendant, is consistent with the Second Amendment's text and historical understanding.

This Court is not so confident that *Bruen* dictates the same constitutional analysis for an as-applied and a facial challenge.  Under either the pre-*Bruen* Third Circuit precedent, or applying the same analysis to facial and as-applied challenges in Defendant's rendition of the post-*Bruen* world, Defendant's as-applied challenge fails.  To that end, regardless of whether the

burden rests with Defendant (pre-*Bruen*) or the Government (post-*Bruen*) in this regard, there is no legitimate basis for his as-applied challenge, separate from his arguments supporting his facial challenge.

Assuming that *Bruen* dictates that it is now the Government's burden to show that Section 922(g)(1) as applied to the facts of this case, is consistent with the text and historical tradition of the Second Amendment, the facts (as alleged in the Indictment) of Defendant's four prior drug trafficking felony offenses in Allegheny County (the last being in 2010), all punishable by 10 years or more of incarceration.  The Government has sustained its burden to demonstrate that his alleged conduct places him outside of the scope of protection under the Second Amendment.

On the other hand, if the one-step inquiry in *Folajtar* still applies, even in the wake of *Bruen*, and it remains Defendant's burden to "overcome the generally conclusive rule that a felony conviction is serious, so that it falls outside the historical class of offenses that renders felons excluded from Second Amendment protections," *Folajtar*, 980 F.3d at 90, Defendant has therefore provided the Court no real basis to put him outside the general class of felony convictions that have historically been excluded from the protection of the Second Amendment. The fact that the alleged possession is of ammunition, instead of a firearm, has no bearing on the analysis as Defendant's alleged conduct in this case takes him outside of the scope of protection of the Second Amendment.[5]  Moreover, nothing in the historical record suggests a popular

---

[5] Defendant's Motion to Dismiss notes that "[h]is possession of that ammunition was him 'bear[ing] arms,'" and "possession of ammunition," - -  rather than a firearm - - is a distinction that "makes no difference." Doc. 40 at paragraphs 8-9.  The Government has "assumed" without conceding, for purposes of this case, that the firearms and ammunition should be treated the same for purposes of analyzing the constitutionality of Section 922(g)(1), noting decisions from other federal circuits similarly foregoing an "ammunition-specific" analysis under Heller.  See *United States v. Goolsby*, 2022 WL 670137 (6th Cir. March 7, 2022)(holding that Section

understanding of the Second Amendment at the time of the founding that extended to preserving gun rights for groups who pose a particular risk of using firearms (or ammunition) against innocent people, including those who committed drug felonies.

In Defendant's brief, he cites to the dissent written by then-Judge Barrett in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019).  The dissent states: "History is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns. But that power extends only to people who are *dangerous*." Id. at 451.  Then-Judge Barrett explained that "founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety," and approved of precedent permitting laws banning firearms from those who have committed violent crimes or drug offenses.  *Id*. at 466.  Among Defendant's prior felony convictions, according to the Indictment, are the four felony drug offenses.  Accordingly, even under the most expansive reading of the Second Amendment, Section 922(g)(1) is constitutional as applied to Defendant, given his prior drug trafficking felony convictions.

### IV.    Conclusion

The *Bruen* Decision, although ground-breaking, has not altered the historic tradition or constitutionality of denying Second Amendment protection to convicted felons.   One need not look further than the *dicta* of the Justices in *Bruen* itself, to determine that 18 U.S.C. Section 922(g)(1) is and remains a regulation on the right to bear arms which is "consistent with the Nation's historical tradition of firearm regulation."  *Bruen* at 2129-2130.  This same rational supports the denial of Defendant's as-applied challenge, and regardless of whose burden it is,

---

922(g)(1) was constitutional as applied to a felon charged with possession of ammunition only). *United States v. Jiminez*, 895 F.3d 228 (2nd Cir. 2018)(holding Section 922(g)(6) constitutional in the case of a felon charged with possession of ammunition).

there are no facts to place him outside of the scope of offenses that renders felons excluded under Section 922(g)(1).  For all of these reasons, Defendant's Motion to Dismiss will be denied.   An appropriate Order follows.  The Court will conduct a status conference tomorrow, November 8, 2022, to determine the path forward in this case.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:      All ECF Registered Counsel of Record